UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**JEREMY LYN SCHREINER,** and
**LINDSAY JEAN SCHREINER**,

Debtors.

Case No. **07-61139-13**

### *MEMORANDUM of DECISION*

At Butte in said District this 17th day of January, 2008.

In this Chapter 13 bankruptcy, after due notice, a hearing was held January 15, 2008, in Billings on Debtors' Amended Motion to Void Lien Under 11 U.S.C. § 506(a)(1) filed October 22, 2007, and on confirmation of Debtors' Chapter 13 Plan filed October 19, 2007. Debtors were represented at the hearing by attorney Craig Martinson of Billings, Montana and Wells Fargo Financial Bank ("Wells Fargo") was represented at the hearing by attorney Michael B. Anderson, of Billings, Montana. The Chapter 13 Trustee, Robert G. Drummond of Great Falls, Montana also appeared at the hearing. Debtor Jeremy Schreiner, Richard Baker and Gail Melcher testified and Exhibits 1 through 4 and A were admitted into evidence without objection.

The Court first considered Debtors' Amended Motion to Void Lien, wherein Debtors seek to set the allowed amount of Wells Fargo's secured claim at $0.00, rendering the entire claim a general unsecured claim. Pursuant to Exhibit 2, Debtors are indebted to First Interstate Bank on a Deed of Trust dated March 31, 2004, in the amount of $104,717.74. Debtors obtained a line of credit from Wells Fargo in June of 2006, which line of credit is secured by a real estate

1

mortgage. As set forth in Proof of Claim No. 2, the balance owing on the line of credit as of Debtors' petition date was $20,605.57.

Debtors maintain in their Motion that the fair market value of their home is $103,180.00 and thus, the entire balance owing to Wells Fargo is undersecured, and thus unsecured under 11 U.S.C. § 506(a). Wells Fargo counters that the fair market value of Debtors' residence is $152,000.00 as opposed to the $103,180.00 asserted by Debtors. Wells Fargo thus posits that the entire amount of its claim is secured.

The sole issue in dispute in this case is the value of Debtors' residence. Richard Baker is a licensed appraiser with 33 years of experience. Richard Baker, after inspecting Debtors' residence both inside and out, prepared an appraisal of Debtors' residence. Exhibit 1. As set forth on page 2 of the appraisal, Richard Baker determined that Debtors' residence would have a value of $103,120.00 to $109,600.00 using the sales comparison approach, a value of $104,900.00 using the cost approach and a value of $106,250.00 using the income approach. Richard Baker went on to set the value of Debtors' home at $103,180.00 giving heavier consideration to "the sales comparison analysis as it best reflects fair market value from direct buyer-seller activities found in the marketplace. Cost and income analysis were given minimal consideration in the analysis as cross references." Richard Baker similarly picked the lower range the of the sales comparison approach because "Sale no. 1 [at $112,500] required least adjustment, however, sale no. 2 [at $129,900] is most like the subject property. Sale no. 3 [at $138,000] is across the street, but is overall superior in size, car storage, age/condition and basement finish requiring substantial downward adjustment."

Gail Melcher, a real estate broker, did a "visual drive-by" of Debtors' residence and

proceeded to prepare a competitive market analysis.  Exhibit A.  Gail Melcher explained that while she is not an appraiser, she does attempt to assess the value of property.  Based upon her visual drive-by, Gail Melcher set the value of Debtors' home at $155,000.00.

Both Richard Baker and Gail Melcher were credible witnesses.  However, for two reasons, the Court assigns more weight to Richard Baker's opinion as to the fair market value of Debtors' residence.  First, Richard Baker is a licensed appraiser.  Second, and more importantly, Richard Baker physically inspected both the exterior and interior of Debtors' residence.  Gail Melcher admittedly did not have the opportunity to inspect the interior of Debtors' home.  For the reasons discussed above, the Court accepts Richard Baker's asserted value of $103,180.00.

The following discussion from *In re Ives*, 289 B.R. 726, 729 (Bankr. D. Ariz. 2003), is instructive in now considering the effect the above valuation has on the Wells Fargo's claim.  By establishing a value of $103,180.00, Wells Fargo's claim, which was previously secured solely by the Debtors' residence, Exhibit 4, becomes wholly unsecured.

> A court must confirm a plan when all the statutory requirements are met. § 1325(a).  Debtor appears to rely on the § 1325(a)(5)(B) cramdown provision.  But even if the Plan meets the § 1325(a)(5)(B) requirement, it also must satisfy § 1325(a)(1) – the Plan must comply with the provisions of Chapter 13.  Modification of the rights of holders of secured claims, in which the only security is the residence of the Debtor, is generally not allowed in a Chapter 13 plan. § 1322(b)(2).  The exception is where the mortgage is wholly unsecured. *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir.2002).  In *Zimmer*, the Ninth Circuit Court of Appeals held that § 1322(b)(2) protection is only available to holders of secured claims, and that holders of wholly unsecured mortgages are not holders of secured claims per § 506(a). *Id*. at 1223-27 (citing *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), and citing and confirming *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36 (1997)).  According to *Nobelman*, the process involves evaluating the status of a claim according to § 506(a), and then, for those claims that are secured, applying § 1322(b)(2) to both the secured and unsecured components of a mortgage claim to protect the rights of the holders of secured claims. *Nobelman*, 508 U.S. at 329-

> 331, 113 S.Ct. 2106. If any portion of the mortgage claim is secured, § 1322(b)(2) protection will apply. *Id.* at 332, 113 S.Ct. 2106. In the present case, Creditor's lien has a secured component of $30,000. Creditor therefore has a secured claim according to § 506(a), secured only by an interest in Debtor's residence, so Creditor is entitled to § 1322(b)(2) protection. The Plan violates § 1322(b) and hence is not entitled to confirmation per § 1325(a), regardless of objection.

*In re Ives*, 289 B.R. at 729. The debtor's plan in *Ives* provided that $30,000 of the $60,000 second lien would be treated as secured in debtor's plan and that the balance would be treated as an unsecured, nonpriority claim. The court concluded such modification was not permissible under § 1322(b)(2).

Section 506 of the Bankruptcy Code establishes the standard for valuation of an allowed secured claim. Section 506(a) provides as follows:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Debtors' residence in this case is encumbered by a first-position Deed of Trust in the amount of $104,717.74. Because the Court has set the fair market value of Debtors' residence at $103,180.00, Wells Fargo, holding a second-position Mortgage, is not entitled to an allowed secured claim under 11 U.S.C. § 506(a). As a result, the entire amount of Wells Fargo's Proof of Claim No. 2 shall be allowed as a unsecured, nonpriority claim in the amount of $20,605.57, which does not violate the protection provided by § 1322(b)(2).

Following the Court's oral ruling on Debtors' Motion to determine the value of Wells

Fargo's allowed secured claim, Debtors' counsel stated that Debtors would need to amend their Chapter 13 Plan. Accordingly, the Court will enter a separate Order as follows:

IT IS ORDERED that Debtors' Amended Motion to Void Lien Under 11 U.S.C. § 506(a)(1) filed October 22, 2007, is GRANTED; and Wells Fargo Financial Bank shall no longer have a security interest in the following real property, to wit:

Lot 2, block 10 of Cherry Hill Subdivision, Second Filing in the City of Laurel, Yellowstone County, Montana, according to the plat thereof on file in the office of the Clerk and Recorder, Yellowstone County, Montana, under Document No. 1207543, aka 1012 13th Ave, Laurel, MT 59044.

IT IS FURTHER ORDERED that the hearing on confirmation of Debtors' Chapter 13 Plan is continued to **Tuesday, February 12, 2008, at 09:00 a.m.**, or as soon thereafter as the parties can be heard, in the 5TH FLOOR COURTROOM, FEDERAL BUILDING, 316 NORTH 26TH, BILLINGS, MONTANA.

BY THE COURT

/s/ Ralph B. Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

5